## Gilbert *versus* Moose's Administrators.

1. One having no interest, as relative or creditor, in the preservation of the life of an insured person, can acquire no title, by assignment or otherwise, to the sum payable on the death of the insured. If, in such case, the insurance company pays him the amount of the policy, the administrators of the insured person may recover it in an action against him.

2. A. insured his life, naming as beneficiary B., who had no insurable interest in A.'s life. B. assigned the policy during A.'s life to C., who likewise had no insurable interest. C. paid certain assessments, was recognized by the company as assignee, and upon A.'s death, collected the sum insured, from the company. In an action by the administrators of A. against C.:

*Held*, that the plaintiffs were entitled to recover said sum, less assessments paid by C.

May 31st 1883. Before GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas of *Adams county :* Of May Term 1883, No. 10.

Debt by David Moose and George A. Moose, administrators of Jacob Moose, deceased, against John G. Gilbert. The narr. claimed the sum of $300, for money had and received by defendant to plaintiffs' use. Plea, nil debet.

On the trial, before McLEAN, P. J., the following facts appeared : The Southern Pennsylvania Mutual Relief Associa-

[Gilbert *v.* Moose.]

tion of Hanover, York county, Pennsylvania, was incorporated under the Act of May 1st 1876, (P. L. 61, § 37), with authority to insure lives upon the plan of assessments upon surviving members.   Jacob Moose, on August 17th 1880, took out a certificate of membership in said association for $2,000, naming as beneficiary, one Peter W. Jacobs; who was named in the application as "step-grandson" of the insured, but who, as it afterward appeared, was not related to Jacob Moose, and had no insurable interest in his life.   The policy or certificate provided that the persons for whose benefit it was issued might assign the same to any person, with the approval of the president and secretary.

On August 31st 1880, for the consideration of $28, the said Jacobs assigned his interest in said certificate to John G. Gilbert, the defendant, who was also without insurable interest in the life of Moose.   The association approved such assignment, and recognized Gilbert as the beneficiary of the certificate in question.   As such he became liable for assessments upon it, which he afterward paid, to the amount of $81.

On April 3d 1881, Jacob Moose died, and on September 10th 1881, the association paid to John G. Gilbert, as assignee and beneficiary of the certificate, the sum of $356, as the product of an assessment upon the surviving members of its class and division.

The personal representatives of Jacob Moose thereupon brought this action against the said Gilbert, to recover the excess of the amount received by him upon the certificate over his disbursements on account of the same.

The defendant requested the court to instruct the jury that under the narr. filed, and the evidence and the law applicable thereto, the plaintiffs were not entitled to recover.   The court declined so to charge ; and, in accordance with the direction of the court, the jury found a verdict for the plaintiffs for $144.04, subject to the question reserved "whether the assignment having been made upon the consideration of $28 only, and the assignee, having no interest in the life insured, holding the policy for the purpose of speculation, and having received the money on the same, whether he is entitled to retain it as against the administrators of the estate of Jacob Moose beyond what he (the defendant) paid out."

The court subsequently entered judgment for the plaintiff upon the verdict and point reserved ; whereupon the defendant took this writ, assigning for error the action of the court in refusing to affirm their point, in directing a verdict for plaintiffs, and in entering judgment for plaintiffs upon the verdict and point reserved.

[Gilbert *v.* Moose.]

*David Wills* (*Edw. J. Cox*, with him), for plaintiff in error.—Moose originated the contract with the association, but the contract itself was between the company and Jacobs, the beneficiary. The administrators of Moose can show no contract relation with the company, and none with Gilbert. If it was a wager, Moose was the author of it, and his administrators can now no more disaffirm it than he could have done. The association raised no objection. If there was any illegality in the contract, the administrators of Moose cannot invoke the aid of the court in their behalf, after it has been fully executed. They are obliged to bring in the illegality of the transaction in making their demand, and in such case the courts will not lend their aid: Swan *v.* Scott, 11 S. & R. 155; Speise *v.* McCoy, 6 W. & S. 485. They made no claim on the association, and gave no notice not to pay Gilbert.

But Moose had an insurable interest in his own life, and could make whomsoever he wished his beneficiary; and he in turn could dispose of it as he pleased: American L. & H. Insurance Co. *v.* Robertshaw, 2 Casey 189; Folmer's Appeal, 6 Norris 133; Cunningham *v.* Smith's Adm'r, 20 Smith 450.

*R. G. McCreary*, for defendants in error.—Moose did have insurable interest in his own life, and his contract with the company was valid. Jacobs had none beyond the amount of his advance to pay Moose's membership fee, and he could transfer no greater interest to Gilbert: May on Insurance, § 110; Stevens *v.* Warren, 101 Mass. 566.

Sound policy forbids all gambling or purely speculative insurance: May on Insurance, §§ 101, 105, 106, 398; Warnock Adm. *v.* Davis, 14 Otto 775. An assignee, without insurable interest, who receives the proceeds of the policy, holds the same as trustee for the representatives of the insured, less advances made by him on the policy: Warnock *v.* Davis, supra; Cammack *v.* Lewis, 15 Wallace 643.

Mr. Justice GORDON delivered the opinion of the court, October 1st 1883.

Jacob Moose, in his lifetime (August 17th 1880), made application to the Southern Pennsylvania Relief Association, of Hanover, York county, for an insurance on his life, and upon this application a policy, or certificate of membership, as it is called, in the sum of $2,000, was issued for the benefit of one Peter Jacobs, an alleged grand-son of the assured. It turns out, however, that Jacobs was in no way related to Moose, being but the son of a son's wife; hence, having no assurable interest in the life on which the policy was issued. On the 31st of August following the date of the certificate, Jacobs, for the

consideration of $28, assigned to John G. Gilbert, the defendant, by whom all subsequent assessments, made by the company, were paid. On the 3d of April 1881, Jacob Moose died, and the defendant received from the company on the policy some $356. It was for this sum of money, or the balance of it, after deducting the assessments and other expenses paid by Gilbert, that this suit was brought. The court below, after hearing the evidence, directed the jury to return a verdict for the plaintiffs, and reserved the following point : " Whether or not, the assignment being made upon the consideration of the payment of $28, the assignee having no interest in the life of the assured, and having taken the assignment for the purpose of speculation only, is entitled to retain the money received on the policy as against the personal representatives of the deceased, beyond the amount of the consideration, fees and assessments paid to the association." Afterwards, on argument, the court entered judgment on the verdict for the plaintiffs. We are thus at once brought face to face with the question, really the only one in the case, can one having no interest in the life assured, and for the purpose of speculation only, acquire, by assignment or otherwise, such title to the policy as the law will enforce ?

It was held by this court as early as 1803, in the case of Pritchet v. The Insurance Co., 3 Yeates 458, that every species of gaming contracts of insurance, wherein the insured has no interest in the subject matter of the policy, or one only colorable, is, in this Commonwealth, without the sanction of either law or usage ; that such contracts are mischievous and dangerous to the interests of trade, commerce and society, and are to be reprobated rather than encouraged by our courts. The very same view of this subject is adopted in Edgell v. McLaughlin, 6 Wharton 176, and it was there said that no kind of wager had ever been recoverable in the courts of Pennsylvania. So also, in the case of Adams v. The Insurance Co., 1 Rawle 97, it was asserted that, in this state, a gaming policy cannot be enforced. We need not stop to consider at length the principles on which these decisions rest, for they must be obvious to every sound moralist. The gambler is, as a rule, reckless and dangerous, and seldom hesitates at the means necessary to secure his bet. We have within our own knowledge a case in which a wagering policy on a life resulted in murder.

So far, however, as the policy itself is, in this case, concerned, we must take it as valid ; nothing to the contrary appears from the evidence, and its validity seems not to have been questioned in the court below. The sole inquiry then is, to whom do the proceeds belong ? Was the court right in holding that they could not go to Jacobs, the beneficiary named

[Gilbert *v.* Moose.]

in the certificate, or to the defendant, his assignee, because of
their want of interest in the assured life? If so, judgment was
properly entered for the plaintiffs, for, in that case, the benefi-
cial interest in the risk remained in Jacob Moose and the rep-
resentatives of his estate.   We do not overlook the fact that
the status of Jacobs is the point of this case, for if he was the
proper and lawful beneficiary, then, even were Gilbert with-
out right, the plaintiffs could not recover, for the proceeds of
the policy would belong to Jacobs, and, on the other hand, if
his claim was not good he had nothing to assign to the defend-
ant.   But as a beneficiary merely, having no interest in the
life, it seems to us very clear that he could lawfully have no
interest in the policy. · For if we admit the contrary; if we
admit that one man may insure his life for the benefit of an-
other, who is neither a relative nor a creditor, our whole doc-
trine concerning wagering policies goes by the board.   The
very foundation of that doctrine is, that no one shall have a
beneficial interest of any kind in a life policy who is not pre-
sumed to be interested in the preservation of the life insured.
But in the · case supposed the presumption is inverted; the
beneficiary is directly interested in the death of the assured.
Moreover, if such a transaction were permitted, the wager
could always be concealed under the mere form of the policy.
Nor can we see, that did the defendant's case depend on an assign-
ment directly from Moose to himself, how it would be bettered
in the least.   The reserved point alleges that Gilbert took the
assignment for the purpose of speculation, and of this there
can be no doubt, ·for, for what other purpose could it have been
taken?   But speculation on what?   The life of Moose, and
the sooner that was determined the better the speculation.   If
there is any difference between this and an original wager pol-
icy, I confess I cannot see it.   Under the case put, Gilbert as
assignee undertakes to pay the assessments; he pays one, say
for example, of ten dollars, and the sole and only consideration
for that payment is the chance that the life may fall in before
the next assessment, and that for his ten dollars he may get
one hundred or, perchance, one thousand dollars.   Between
this and the bet in the case of Phillips *v.* Ives, 1 Rawle 36,
on the life of Napoleon Bonaparte, we can see no material dif-
ference.   Both are wagers, and both dependent on the contin-
gency of a life.   No semblance of authority from either Penn-
sylvania or Federal courts, has been adduced in support of the
position assumed for the plaintiff in error, except a dictum of
Judge SHARSWOOD, then president of the district court of Phila-
delphia, in the case of the Insurance Co. *v.* Robertshaw, 2 Ca.
189.   Not only is the case itself very far from being in point,

[Gilbert v. Moose.]

but even the language cited was intended to have no application to a case like that in controversy.

The position assumed by the learned judge is, that where a policy is bona fide and founded upon an insurable interest, the assignment, or gift of it, to a friend or other person, is no fraud upon the insurance company by which it was issued. This, however is a position not controverted in the suit now under consideration. Therefore, admitting this dictum to be authority in a case proper for its application, it is certainly not so in the case in hand.

When we pass from our own courts to those of neighboring states, we find such difference in the decisions upon this subject that, as authority, they afford us little or no help in the way of a definite conclusion. In Rhode Island, Clark v. Allen, 11 R. I. 439, it has been held, that the assignment of a life policy to one having no interest in the life insured, is good. On the other hand, in New York, in the case of Ruse v. The Life Insurance Co., 23 N. Y. 516, the doctrine appears to be, and this independently of the statute of that state avoiding wagering contracts of every sort, that a policy obtained by a party having no interest in the subject matter of the insurance, is a mere wager and void. Opposed to this we have the case of the Trenton Mutual Life and Fire Insurance Co. v. Johnson, 4 Zab. 576 (New Jersey), where it was determined that it was not necessary for the plaintiff, in an action on a policy on the life of another, to show that he had an interest in such life, and this, as it appears, on the ground that wagers on indifferent questions are not prohibited by the laws of New Jersey. But we abstain from further citation of these conflicting opinions, since it involves but useless labor, and turn to the federal decisions, which, next to our own, are of the most value in our discussion. Of these we have two directly in point : Cammack v. Lewis, 15 Wal. 643, and Warnock v. Davis, 14 Otto 775. In the first of these the facts are briefly as follows : Lewis insured his life for $3,000, and assigned the policy to Cammack to whom he owed $70. Cammack paid the first years premium, and upon the death of the assured, some seven months afterwards, received from the company the amount due on the risk. Of this he paid $1,000 to Mrs Lewis and kept the balance. To recover this money, suit was brought against Cammack by the administrators of Lewis, and it was held that they could recover the whole amount received by the defendant, less premiums by him paid, and other just offsets. In the opinion, which was delivered by Mr Justice MILLER, it was said that the transaction with Cammack was a wager ; that the disproportion between the debt and the amount received by him, deprived the matter of all pretence of being a bona fide effort to secure a

debt ; that the strength of this proposition was not diminished by the fact that Cammack was to get but $2,000 out of the $3,000, nor was it weakened by the further fact that the policy was taken out by Lewis and assigned to Cammack.    In the second case, the facts were, that the decedent had, in his life time agreed with the defendants to procure a policy on his life, they to pay the fees and assessments, and on his death to be entitled to nine-tenths of the insurance.    In pursuance with this arrangement, a policy was procured and assigned to the defendants, who, after the death of the assured, received from the insurers nine-tenths of the amount due on the policy.    Here again it was held, on suit by the administrators of the estate of the assured, that they were entitled to recover the money received by the defendants on the said policy.

In the opinion delivered by Mr. Justice FIELD, the case of Cammack *v.* Lewis is approved, and cited as sustaining the doctrine that the assigning of a policy to a party not having an insurable interest in the life, is as objectionable as though the policy were taken in the assignee's own name.

These authorities, in connection with our own, remove all hesitation concerning the rectitude of the judgment of the court below.    If, however, the question were one of first impression, and to be settled on the ground of public morality and judicial policy, we could hardly fail to reach the same conclusion. So fraught with dishonesty and disaster, and so dangerous even to human life, has this life insurance gambling become, that its toleration in a court of justice ought not for one moment to be thought of.

The judgment is affirmed.